PETER FRANCIS *versus* ALBERT WOOD.

In an action on the case, claiming damages against the present defendant for the rescue of a debtor of the plaintiff from an officer, when arrested on a writ in favor of the present plaintiff against such debtor; *the return of the officer*, on such writ, that he had arrested the body of the debtor and that he was rescued from his custody by the present defendant, is not conclusive evidence of the facts stated in the return, on the trial of the present action.

THIS case came before the Court on exceptions to the ruling and instructions of GOODENOW District Judge, of which exceptions a copy follows: —

{ " Cumberland, ss., District Court, Western District, March Term, 1848.

" This was an action on the case against defendant charging him with the rescue of John Seymour. The writ, return and pleadings are made a part of the case, also an original writ of attachment and capias *v.* said John Seymour in favor of Francis with the officer's return thereon, with the affidavit attached thereto. Plaintiff introduced said writ and officer's return in evidence, and also the evidence of the judgment rendered against said Seymour on default in said action. Plaintiff rested his case, and contended that the officer's return was conclusive evidence of the rescue, against this defendant. (1. The court overruled this, and ruled that the defendant might introduce testimony to disprove the officer's return, it being only *prima facie* evidence of that fact.) Testimony was then introduced on both sides, respecting the question of the rescue. Stephen O. Danielson, called by the plaintiff, among other

things, testified, that he went on board the schooner commanded by the defendant and arrested the said Seymour, he being one of the crew, who was pointed out to him by plaintiff as John Seymour, and while he had his hand upon him, the captain ordered Seymour to go forward and help hoist up one of the sails, and that Seymour broke away from him; that he commanded the captain to assist him, and that the captain said he should have nothing to do with it, that he had his vessel to take care of, and when the officer told him he should hold him responsible, if he carried Seymour off in his vessel, the captain replied, that he knew as much about the law as Danielson did. Seymour was arrested, about the time the vessel was getting under way. The evidence was conflicting upon the point whether she had in fact begun to cast off from the wharf, when Danielson went on board and arrested said Seymour, some witnesses testifying that she had, and Danielson and others denying it. Testimony was then introduced by the defendant conflicting with that of Mr. Danielson and tending to prove that the defendant had no agency in the alleged rescue. The counsel for the defendant objected to the writ against John Seymour, as giving no authority to arrest Daniel Seymour, and proved that the person arrested, was sometimes called and known as Daniel Seymour, and defendant's counsel contended, that there was no evidence that Daniel Seymour was the same person as John Seymour, and that the subsequent service of the same writ by attachment, &c., negatived the allegation of a previous arrest; but these objections were not sustained by the court. It was also contended that the facts stated by Danielson, did not, if all true, constitute a rescue, that there was no resistance, and no aid furnished Seymour, to escape. (2. The judge instructed the jury, that the law must have a reasonable construction, and that it would not require one man to make a great sacrifice in order to enable another to realize a small benefit, and that if the defendant was about getting his vessel to sea, when the officer came on board with a civil process, it was not his duty to suspend his operations, if he would thereby be in hazard of losing the benefit of the tide, or a fav-

orable wind, or of coming in contact with other vessels near him, but that he would have a right to go on in the same way as if Danielson had not come on board.) But that the defendant was not entitled to make haste to put his vessel to sea, in order to defeat the arrest. The jury returned a verdict of not guilty. And in answer to a question put to the foreman, he said, the jury found the defendant did not hurry his vessel to sea, in consequence of the arrest of Seymour.

The ruling of the Judge, that said return was not conclusive evidence of a rescue, included in brackets and marked 1, and also to that part of the instructions of the Judge, marked 2, and included in brackets, the defendant excepts, and prays that his exceptions may be allowed and signed.

"A. W. and J. M. True, plaintiff's attornies."

The return of the officer, was in these words :—

"Cumberland ss. Portland, Sept. 15, 1846.

"Pursuant to the within precept, I arrested the body of the within named John Seymour, and he, the said Seymour, was subsequently wrested from me by Captain Albert Wood, master of the schooner James, and by him carried to sea in said schooner, and afterwards, to wit, on the same day, I attached a chip as the property of the within named defendant, and left a summons at his last and usual place of abode, for his appearance at court.      S. O. Danielson, Constable of Portland."

There was but one count in the declaration, and the plaintiff's only allegations, respecting the acts of the defendant in making the rescue, were in these words : —

"By virtue of which writ, the said Danielson before the time appointed for the return of said writ, to wit, on the fifteenth day of September, aforesaid, at said Portland, took and arrested the said Seymour by his body, and had him in his custody for the cause in said writ mentioned ; nevertheless, the said Wood, well knowing the premises, but contriving to injure the plaintiff and deprive him of the means of recovering his said debt, on said fifteenth day of September, rescued the said Seymour from and out of the custody of said Danielson, and caused the said Seymour to escape and go at large out of the custody of the said Danielson wheresoever he would."

*A. W. & J. M. True*, for the plaintiff, contended, that the return of the officer was conclusive evidence of the facts therein stated. 4 Bac. Abr. 399, 404 ; Tit. Resc. Cro. Jac. 419, 486 ; Cro. Eliz. 815 ; Com. Dig. Ret. G. and Resc. B. 2, 4 ; 2 Dane, 645 ; Yelv. 34 ; 5 Mass. R. 517 ; 9 Mass. R. 99 ; 11 Mass. R. 165 ; 17 Mass. R. 601 ; 1 N. H. Rep. 68 ; 8 N. H. Rep. 546 ; 23 Maine R. 489 ; 3 Fairf. 417 ; 7 Greenl. 14 ; 10 Mass. R. 207 ; 2 Pick. 310. These facts set forth, show a rescue, and therefore it was proved. If we find the officer returns a rescue, we cannot have a remedy against him. His return is conclusive, and prevents our recovering against him. Cro. Jac. 419, 486.

We contend also, that the instructions of the Judge on the second point made in the exceptions, were also erroneous. No actual force is necessary to constitute a rescue. The setting at liberty of a person legally arrested, is sufficient. Taking the man arrested to sea, was as much a rescue, as if he had used force. Com. Dig. Resc. A. Salk. 79 ; Co Lit. 160 (b.)

When the authority of the law stepped in, and the defendant was commanded by the officer to assist in securing the prisoner, he was bound to obey, and had no right to go to sea. The instruction on this point was erroneous.

*Howard* and *Shepley*, for the defendant.

The principal question in this case is, whether the return of the constable on the plaintiff's writ, against one Seymour, is conclusive in this action. The general rule is, that the return of an officer is not conclusive, unless between parties, and those claiming under them. In the present case, the defendant was not a party to the suit, and was in no way connected with it, nor in any manner claims under either party. We will trouble the court with the citation of but two cases on this point. *Brown* v. *Davis*, 9 N. H. Rep. 76, and *Bott* v. *Burnell*, 11 Mass. R. 163.

The case of a rescue is no exception to the general rule. The English cases cited for that purpose only show, that the return by an officer of a rescue is conclusive, for the single purpose of issuing an attachment for bringing the alleged of-

Francis *v.* Wood.

fender before the court, for resisting its process. In the case cited for the plaintiff, from New Hampshire, the question was merely, whether the officer was correctly admitted as a witness, and the case itself shows, that a part of those charged with the rescue were acquitted, and part held, which could not be, if the return was conclusive.

The jury have found, that the defendant did not hurry his vessel to sea, in consequence of the arrest of Seymour. The remarks of the district Judge, in this respect, are believed to be correct. But whether they are so or not, is but an opinion on an abstract proposition, and cannot furnish any cause for a new trial, however erroneous. 16 Conn. R. 433. They could do the plaintiff no injury.

Under the circumstances of this case, the defendant was not bound to stop his vessel from going to sea, for the purpose of being a constable's assistant, in attempting to arrest a poor sailor, for a debt of fifteen dollars. The defendant is sued only for committing a rescue, and it is therefore needless to inquire, whether he did or did not improperly decline to act, as constable's assistant in this matter. It would not be contended, that the officer's return would be conclusive as to that; and should a suit be brought for that cause, the defendant will be ready to take care of himself.

On April 20, 1849, SHEPLEY C. J. stated that there had unfortunately, been a division in opinion between the different members of the court, in this case. He read the following opinion.

SHEPLEY J. — This is an action on the case, brought to recover damages, for an alleged rescue of one John Seymour from the custody of an officer.

The first question presented by the bill of exceptions is, whether the return of the officer be conclusive upon the defendant.

It may be difficult to reconcile all the decisions respecting the conclusive character of the returns made by officers, upon

precepts. There can be no doubt, that such returns are con-
clusive upon certain persons, and for certain purposes, while
they are not conclusive upon other persons, or for other pur-.
poses. If there be difficulty, it consists in making the proper
distinctions, that some rule may be established, by the applica-
tion of which, each case, as it arises, may be decided. The
return of an officer, of his proceedings on the levy of an exe-
cution upon lands, was held in the case of *Bott* v. *Burnell,*
11 Mass. R. 163, to be conclusive between the debtor and
creditor and all persons claiming under them respectively.
But not to be conclusive upon one, not a party to the execution
or judgment, and not claiming by a privity of title. In the
case of *Brown* v. *Davis,* 9 N. H. Rep. 76, many of the cases
were examined by PARKER C. J., who stated the general prin-
,ciple to be derived from the greater portion of them to be,
·" that between the parties to a suit, and those claiming under
them as privies, and all others whose rights and liabilities are
dependent upon the suit, as bail and indorsers, the return of
the sheriff, of matters material to be returned, is so far conclu-
sive evidence, that it cannot be contradicted for the purpose of
invalidating the sheriff's proceedings, or defeating any right
acquired under them. But such return is not conclusive as to
third persons, whose interests are not connected with the suit,
but may be affected by the proceedings of the sheriff; nor as
to collateral facts or matters, not necessary or proper to be re-
·turned." The application of this rule would decide, that the
·return of the officer in the present case, was not conclusive
upon the defendant. And yet the return of an officer, of a
rescue, has often been held not to be traversable. It was
·stated by the clerks of the Queen's bench, in Lady Russell and
Wood's case, Cro. Eliz. 781, that the course of the court had
always been, to reject such traverses. The same doctrine is
asserted in *Rex* v. *Minifry,* Strange, 642; in Tracy's case, 12
Mod. 556, and in *Rex* v. *Elkins,* 4 Burr. 2129.

It happens not very unfrequently, that language is used by
·courts of justice, appropriate to exhibit a correct rule for judg-
.ment, upon the subject or question then under consideration

which would not be correct as applied to another subject. Hence the rule that such language, though general, is limited by the subject, to which it was applied. Thus limited it is perceived to be appropriate, and finds its explanation. By the ancient English practice, one who had been returned by an officer as guilty of a rescue, was considered to be guilty of a contempt of the court, to which the precept was returnable. An attachment issued in the name of the king, to bring him before the court to be punished for it ; and the court refused to inquire, whether the return of the officer were true or not, holding the return for this purpose not to be traversable, and leaving the person fined, to his remedy against the officer, if he had made a false return. The person charged with a rescue, might afterward be indicted and punished, if found to be guilty of a rescue of one guilty of a criminal offence. Or might be liable in civil cases, to him, who had been injured by the rescue of one from the custody of an officer, holding him by virtue of mesne process. No ancient case has been cited or found, which decides that an officer's return of a rescue would be conclusive against the person, upon trial of an indictment or action upon the case. On the contrary an indictment must allege, that the act was done forcibly and against the will of the officer, who held the person rescued, in custody ; and these allegations must be proved. *Burridge's case*, 3 P. Wms. 483 ; *Gyfford* v. *Woodgate*, 11 East, 297 ; Roscoe's Cr. Ev. 879.

It would indeed be an extraordinary position, and one utterly inadmissible by our fundamental law, that a person could be convicted and punished for a crime, upon the return of an officer, without opportunity to confront or cross-examine him on oath, or to disprove the truth of his official declaration or testimony. That would be little less extraordinary, which should assert, that the property of a person might be taken from him, under color of a trial in a civil action, without any opportunity to controvert or disprove the testimony, introduced against him.

The case of *Hodges* v. *Marks*, Cro. Jac. 485, was an action on the case, for a rescue on mesne process ; not guilty was

pleaded, and upon testimony introduced, the jury found a special verdict, setting forth all the attending circumstances, exhibiting the manner in which the person was arrested, and that he was rescued. This would have been quite unnecessary if the return of the officer had been considered conclusive.

The case of *Kent* v. *Elwis,* Cro. Jac. 241, was a writ of error brought in the Exchequer chamber, to reverse a judgment recovered in a like action. One of the errors alleged was, that the rescue was declared to be made from the deputy of the bailiff of the franchise, whereas it ought to have been from the bailiff himself, or from the sheriff. The answer was " *Sed non allocatur;* for there is diversity between this case, which is an action upon his case, wherein he shall shew the truth as *in rei veritate* it is, and not as it is upon the return of rescues or indictments, which say, that it was done to the sheriff or bailiff himself."

In the case of *Wilson* v. *Gary,* 6 Mod. 211, it was not only held to be necessary by HOLT C. J. to prove the manner and circumstances of the arrest, but the person alleged to have been rescued, was admitted as a witness for the defendant, to repel the charge made against him.

There is a remark made in the case of *Buckminster* v. *Applebee,* 8 N. H. Rep. 546, relied upon by the counsel for the plaintiff, which states, " the return so far as it goes, is conclusive evidence of the rescue." This was probably made, without noticing the difference in effect of such a return upon a hearing for a contempt, and upon the trial of an action upon the case; and it is not in conformity to the rule subsequently laid down in the case of *Brown* v. *Davis.*

Another question is presented upon the instructions, respecting the duty of the defendant, as master of a vessel to suspend his operations, when about to proceed to sea, if he would avoid the charge of being guilty of a rescue. The instructions were in substance, that it was not his duty to do so.

The law imposes upon those in no way connected with a civil process or its service, no obligation to aid in its service,

further than to abstain from all attempts to molest or obstruct the officer, and to assist him, when properly called upon to do so. The defendant was not called upon to answer for a refusal to assist the officer. The instructions could have had no reference to such a case, but to the case of one charged with a rescue, which must be forcibly made and be so alleged. *Fermor* v. *Phillips*, Holt, 537.

One, who proceeds with his ordinary business, without interfering in any manner with the proceedings of an officer employed in the service of civil process, cannot be considered as making or as attempting to make rescue of a person from the custody of such officer. The declaration contains but one count, and that is for a rescue. The bill of exceptions states, that it was an action, " charging him with the rescue of John Seymour." The plaintiff at first rested his case upon the return of the officer, as conclusive proof of a rescue. That position having been overruled, " testimony was then introduced on both sides, respecting the question of the rescue."

In the defence it was contended, that the facts stated by the officer " did not, if all true, constitute a rescue." Upon a case thus presented, the instructions were given. No other cause of action or of complaint was presented to the court for its instructions to the jury. It would be quite erroneous, to apply those instructions respecting a rescue, to some other cause of action, or to an inquiry, whether the defendant conducted correctly and legally in every respect, in which his conduct might be viewed. No such question or inquiry was presented by the declaration and subsequent proceedings. The only question presented to the court for consideration, was whether the defendant had been guilty of a rescue; and any remark made, having no application to that issue, would be of no importance. The question now presented to this Court is, whether the instructions as applicable to the alleged rescue only, were erroneous. Not whether they would be, if applied to some other inquiry or cause of action. Nor can it be correct to assume, that the testimony of the officer presented correctly the con-

duct of the defendant, and then to proceed to determine there-
from, that he conducted in an unlawful manner, for the case
finds, that testimony was introduced in defence, "conflicting
with that" of the officer "and tending to prove that the defend-
ant had no agency in the alleged rescue."

It will be unnecessary to depart from the case, to determine
the respective duties of officers having precepts, and of
masters of vessels, when they come in conflict, for a cause of
complaint of a different character from that of a rescue, before
they are regularly presented.     *Exceptions not sustained.*

TENNEY J. concurred in this opinion.

WHITMAN, late Chief Justice, concurred with SHEPLEY and
TENNEY Justices, on the first point,— that the return of the
officer was not conclusive,— but did not concur in the residue
of the opinion.

The following opinion was read by

WELLS J. — The officer, who made the arrest, states, in his
testimony, that he went on board the schooner, commanded by
the defendant, and arrested Seymour, one of the crew, and
while he had his hand upon Seymour, the defendant ordered
him to go forward, and help hoist one of the sails, and that
Seymour broke away from the officer, who commanded the
defendant to assist him; that the defendant said, "he should
have nothing to do with it, that he had his vessel to take care
of," and when the officer told him, he should hold him respon-
sible, if he carried Seymour off in his vessel, the defendant
replied, that he knew as much law, as the officer did.

Although there was testimony, conflicting with that of the
officer, yet the instructions must have reference to the evi-
dence, upon the hypothesis, that the jury might find it to be,
as the plaintiff contended it was.

Seymour was arrested, about the time the vessel was getting
under way.

The instructions to the jury, were made, in reference to the
material facts, which were submitted for their determination.

The Judge told the jury, what the defendant might do, in

certain contingencies, in reference to the management of his vessel, when the arrest was made, " *but that he would have a right to go on, in the same way, as if Danielson, the officer, had not come on board.*"

The jury must have understood by this language, that in the whole management of the vessel, and the control of the crew, for that purpose, the defendant was not bound to alter his conduct, but might proceed in such manner, as he thought, the situation and condition of his vessel would require, irrespective of the presence of the officer.

The defendant would consequently be at liberty, to command one of his men, who might be under arrest, to attend to any duty on board the vessel. And there would be but little doubt that the seaman would act in obedience to his command, and by violence, release himself from the officer. Although the defendant might not use any actual force, by which rescues are ordinarily accomplished, the relation existing between the master and the seaman, is of such a character, that the command of the former would probably excite the latter, to the exercise of all his physical power, to effect his escape. Surrounded by his shipmates, acting in conformity to the master's orders, he would be encouraged to violate the law, and prevent the service of legal process. The master would thus as effectually aid in the rescue, as if he personally removed the hand of the officer, from the prisoner, and must be considered as uniting with the seaman, in the rescue, made by him. But the declaration not only alleges a rescue, by the defendant, it also declares, that he caused Seymour " to escape and go at large."

If the master of a vessel, can be permitted to conduct in the same manner, when an officer is on board of it, with a lawful precept, and has actually made an arrest of one of his crew, as if the officer were not present, it may be very difficult in such cases, to execute either civil or criminal process. Under the instruction, given in the present case, the master might weigh anchor, while the officer was on board, and before he could have a reasonable time, to remove his prisoner,

compel him to relinquish the discharge of his official duty, or subject himself to the necessity of being carried to sea.

It is said, one cannot be guilty of a rescue, by the use of words only; such doctrine is true, when applied to animals, that are not influenced by language. But when an action is produced by words, and by the presence and countenance of the speaker, they are in substance equal to the amount of force requisite, to create such an action.

But if the defendant was not guilty, technically, of a rescue, as the declaration not only embraces that, but also contains the allegation of causing an escape, if the seaman was under arrest, as the testimony tends to show, when the defendant, with a full knowledge of it, ordered him to attend upon his duties, on board the vessel, and he thereupon broke away from the officer, who was unable to detain him, the defendant appears to have been guilty of causing him to escape and go at large. And the instructions must be taken, in reference to the declaration in the writ, as well as the evidence. Upon the part of the case under consideration, they were not given, at the request of the plaintiff, but in answer to that of the defendant, and if prejudicial to the rights of the plaintiff, they furnish just ground of exception.

From the view, taken by me, of the case, it is unnecessary to express any opinion, upon the effect of the officer's return, as in my judgment, a new trial ought to be granted, because the instructions, which have been mentioned, were erroneous.